## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

MASTRONARDI PRODUCE, LTD.,

     a Canadian Corporation,

         Plaintiff,                  Case No. 2:15-cv-12331

v.

                                  Hon. Paul D. Borman

LAKESIDE PRODUCE, INC.,

     a Canadian Corporation,

     Defendant.

_____

## MOTION FOR PRELIMINARY INJUNCTION

NOW COMES Plaintiff, Mastronardi Produce, Ltd. ("Mastronardi"), by and through its counsel, and moves this Honorable Court for an Order preliminarily enjoining Defendant, Lakeside Produce, Inc. ("Lakeside"), for the reasons set forth below and in the attached brief, from continuing to import into the United States or use in commerce in the United States, the trademark MEDLEY'S (or any other marks that are confusingly similar to Mastronardi's MEDLEY and GOURMET MEDLEY® marks) connection with tomatoes, peppers, cucumbers, and strawberries.

1

1.     Since 2009 Mastronardi has sold millions of containers of multicolored cocktail tomatoes under the cobranded marks GOURMET MEDLEY® and MEDLEY™.

2.     Lakeside has recently begun selling containers of multicolored cocktail tomatoes under the name MEDLEY'S.

Images of the respective parties' products as currently sold are depicted below, Mastronardi on the left and Lakeside on the right:



3.     The dominant word in each of the competing brands, MEDLEY™ and MEDLEY'S, is virtually the same.

4.     Each product is sold in a 2-pound size and packaged in virtually identical clear plastic clamshell-style containers.

5.     The products are also sold at the same price ($5.99), to the same customers (e.g. Costco customers).

6.     Consumer confusion between the two brands is likely to result unless Lakeside is enjoined from continuing to market its tomatoes under the MEDLEY'S brand.

7.     Mastronardi and Lakeside are direct competitors with headquarters located five miles apart.

8.     Mastronardi and Lakeside products are literally sold side-by-side in the same stores.

9.     Mastronardi's GOURMET MEDLEY® / MEDLEY™ product had been in the marketplace for years prior to the appearance of Lakeside's MEDLEY'S.

10.     Lakeside is not a newcomer to the industry and it simply is beyond belief that Lakeside would launch a product, for sale to market giants like Costco, absent knowledge that its direct competitor had for years been selling a cocktail type tomato virtually identical in appearance under the same name.

11.     Accordingly, Mastronardi requests that the bond in this matter be waived or set reasonably low given the strong inference that Lakeside knew about Mastronardi's product before Lakeside introduced the competing MEDLEY'S product.

### L.R. 7.1 COMPLIANCE

Lakeside was personally served with the complaint on Monday, July 27, 2015, but it has yet to answer or otherwise respond to the complaint.  Accordingly, on

3

instructions from the Court, Mastronardi states that since Lakeside has yet to file an appearance it was not possible to discuss the motion with Lakeside prior to file.   Moreover, prior to filing the complaint Mastronardi did correspond with two different firms claiming to represent Lakeside, and Mastronardi provided written notice to the second firm that Mastronardi would be seeking injunctive relief if the matter could not be resolved.

Respectfully submitted,

s/ Mark D. Schneider (P55253)
GIFFORD, KRASS, SPRINKLE,
ANDERSON & CITKOWSKI, P.C.
2701 Troy Center Drive, Suite 330
Troy, Michigan  48084
(248)647-6000
(248)647-5210 (Fax)
litigation@patlaw.com


s/ David E. Einstandig (P47344)
THAV GROSS, PC
30150 Telepgraph Road, Suite 444
Bingham Farms, Michigan 48025
(248) 645-8232
(248) 220-1410 (Fax)
deinstandig@thavgross.com

***Attorneys for Plaintiff***

Dated: August 7, 2015

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

MASTRONARDI PRODUCE, LTD.,

      a Canadian Corporation,

              Plaintiff,                    Case No. 2:15-cv-12331

v.

                                        Hon. Paul D. Borman

LAKESIDE PRODUCE, INC.,

      a Canadian Corporation,

              Defendant.

_____

**BRIEF IN SUPPORT**
**OF THE MOTION FOR PRELIMINARY INJUNCTION**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................. iii

INDEX OF EXHIBITS ATTACHED TO THE BRIEF ............................... v

APPENDIX INDEX ........................................................................... vi

CONCISE STATEMENT OF ISSUES PRESENTED ............................... 1

CONTROLLING OR MOST APPROPRIATE AUTHORITY ..................... 2

   I.   RECITATION OF FACTS ........................................................ 2

      A. Mastronardi Produce, Ltd. ................................................ 2

      B. GOURMET MEDLEY® is a Registered Mark ...................... 5

      C. Lakeside Produce, Inc. ..................................................... 6

      D. The Appearance in the Marketplace of Lakeside's Product ....... 6

   II.   STANDARD OF REVIEW ..................................................... 10

   III.   ARGUMENT ...................................................................... 11

      A. Likelihood of Success on the Merits ................................. 11

         1. The Standard for Success ........................................... 12

         2. GOURMET MEDLEY® / MEDLEY™ ™ are Strong Mark(s) for
            Multicolored Cocktail Tomatoes ............................... 13

         3. Relatedness of the Goods .......................................... 18

         4. Similarity of the Marks ............................................. 19

         5. Evidence of Actual Confusion .................................... 21

         6. Marketing Channels Utilized ..................................... 21

         7. Degree of Customer Care and Sophistication ............... 22

         8. Lakeside's Intent in Selecting its Mark ...................... 22

      B. Irreparable Injury Follows from the Showing of A Likelihood of ........... 23
         Confusion .................................................................... 23

      C. Harm to the Public May Result If An Injunction is Not Granted ......... 24

i

D. The Public Has An Interest In Not Being Confused Concerning the Source of Food ........................................................................................................24

CONCLUSION ........................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

*American Throwing Co. v. Famous Bathrobe Co*.,

    250 F.2d 377, 382 (CCPA 1957)..........................................................................20

*Ashland Oil v. Olymco*,

    1995 U.S. App. LEXIS 24652 (6th Cir. Ky. Aug. 21, 1995)...............................14

*Century 21 Real Estate Corp. v. Century Life of America*,

    970 F.2d 874, 877 (Fed. Cir. 1992) .....................................................................20

*Citizens Banking Corp. v. Citizens First Bancorp, Inc.*,

    2007 U.S. Dist. LEXIS 88325 (E.D. Mich. Dec. 3, 2007)...................................19

*Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*,

    109 F.3d 275, 286 (6th Cir. Ohio 1997)..............................................................17

*Dino Drop, Inc. v. Chase Bar & Grill, LLC*,

    2011 U.S. Dist. LEXIS 18088, 20-21 (E.D. Mich. Feb. 24, 2011)............... 13, 14

*Express Welding, Inc. v. Superior Trailers, LLC*,

    700 F. Supp. 2d 789, 797 (E.D. Mich. 2010) ......................................................13

*Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc*.,

    670 F.2d 642, 648 (6th Cir. 1982) .................................................................. 2, 12

*Hershey Co. v. Art Van Furniture, Inc*.,

    2008 U.S. Dist. LEXIS 87509 (E.D. Mich. Oct. 24, 2008) .......................... 15, 16

*Innovation Ventures, LLC v. N2G Distrib*.,

    2008 U.S. Dist. LEXIS 30047, 5-6 (E.D. Mich. Apr. 14, 2008)................... 11, 23

*Inwood Labs., Inc. v. Ives Labs., Inc.*,

    456 U.S. 844, 851 n.11 (1982) ............................................................................13

*Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc*.,

    453 F.3d 377, 382 (6th Cir. 2006).......................................................................23

*Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc*.,

    128 F.3d 1111, 1115 (7th Cir. 1997)...................................................................19

*Midwest Guar. Bank v. Guar. Bank*,

    270 F. Supp. 2d 900 (E.D. Mich. 2003) ............................................ 19, 21, 22, 24

*Pizzeria Uno Corp. v. Temple*,

    747 F.2d 1522, 1529-1530 (4th Cir. S.C. 1984).....................................................20

*Premium Balloon Access., Inc. v. Creative Balloons Mfg.*,

    573 Fed. Appx. 547, 556 (6th Cir. Ohio 2014) ...................................................14

*Reynolds v. Banks*,

    2012 U.S. Dist. LEXIS 91064, 12-13 (E.D. Mich. June 29, 2012) ....................11

*Valvoline Co. v. Magic Quick Lube*,

    2009 U.S. Dist. LEXIS 100944, 6-7 (E.D. Mich. Oct. 29, 2009) .......................11

*Wynn Oil Co. v. Thomas*,

    839 F.2d 1183, 1190-1191 (6th Cir. Tenn. 1988) ...............................................20

## Rules

15 U.S.C. § 1052(f).......................................................................................... 11, 15

15 U.S.C. § 1114(1) ...............................................................................................12

## INDEX OF EXHIBITS ATTACHED TO THE BRIEF

Exhibit A          Declaration of Paul Mastronardi

Exhibit B          U.S. Registration No. 3687675 and USPTO File History

Exhibit C          Copies of Canadian Trademarks TMA799808 and TMA756261

Exhibit D          Images from LakesideProduce.com

Exhibit E          Declaration of Debra Nichols

# APPENDIX INDEX

*Reynolds v. Banks*,
2012 U.S. Dist. LEXIS 91064, 12-13 (E.D. Mich. June 29, 2012) ................ App. 1

*Valvoline Co. v. Magic Quick Lube*,
2009 U.S. Dist. LEXIS 100944, 6-7 (E.D. Mich. Oct. 29, 2009).................. App. 2

*Innovation Ventures, LLC v. N2G Distrib*.,
2008 U.S. Dist. LEXIS 30047, 5-6 (E.D. Mich. Apr. 14, 2008) ................... App. 3

*Dino Drop, Inc. v. Chase Bar & Grill, LLC*,
2011 U.S. Dist. LEXIS 18088, 20-21 (E.D. Mich. Feb. 24, 2011) ............... App. 4

*Ashland Oil v. Olymco*,
1995 U.S. App. LEXIS 24652 (6th Cir. Ky. Aug. 21, 1995) ........................ App. 5

*Hershey Co. v. Art Van Furniture, Inc*.,
2008 U.S. Dist. LEXIS 87509 (E.D. Mich. Oct. 24, 2008) ........................... App. 6

*Hershey Co. v. Art Van Furniture, Inc*.,
2008 U.S. Dist. LEXIS 87509 (E.D. Mich. Oct. 24, 2008) ........................... App. 7

*Citizens Banking Corp. v. Citizens First Bancorp, Inc.*,
2007 U.S. Dist. LEXIS 88325 (E.D. Mich. Dec. 3, 2007) ........................... App. 8

*Innovation Ventures, LLC v. Body Dynamics, Inc*.,
2009 U.S. Dist. LEXIS 26535, 9-10 (E.D. Mich. Mar. 30, 2009)................. App. 9

## CONCISE STATEMENT OF ISSUES PRESENTED

Since 2009 Mastronardi Produce, Ltd., ("Mastronardi") has sold containers of multicolored cocktail tomatoes under the cobranded marks GOURMET MEDLEY® and MEDLEY™.  Defendant, Lakeside Produce, Inc. ("Lakeside") has recently begun selling containers of multicolored cocktail tomatoes under the name MEDLEY'S.  Images of the respective parties' products as currently sold are depicted below, Mastronardi on the left and Lakeside on the right:



Consumer confusion between the two brands is likely to result unless Lakeside is enjoined from continuing to market its tomatoes under the MEDLEY'S brand.  The dominant word in each of the competing brands, MEDLEY™ and MEDLEY'S, is virtually the same.  Each product is sold in a 2-pound size and packaged in virtually identical clear plastic clamshell-style containers.  The products are also sold at the same price ($5.99), to the same customers (e.g. Costco customers).

## CONTROLLING OR MOST APPROPRIATE AUTHORITY
## FOR RELIEF SOUGHT

This case involves issues of trademark infringement and unfair competition. Mastronardi is seeking a preliminary injunction against the continued sale of Lakeside's MEDLEY'S product.  The eight factors outlined in *Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc*., 670 F.2d 642, 648 (6th Cir. 1982) should control the Court's consideration of the likelihood of confusion analysis.  This Court has also issued several decisions involving preliminary injunctions in trademark cases and Mastronardi refers the Court to those cases and relevant Sixth Circuit decisions, citations to which are included in the appropriate sections of this brief.

## I.      RECITATION OF FACTS

### A.      <u>Mastronardi Produce, Ltd.</u>

Mastronardi is a family rooted business based in Kingsville (Leamington) Ontario that, together with its affiliates, has been growing, manufacturing and distributing fresh greenhouse grown produce for 60 years.  See **Ex. A** – Dec. of Paul Mastronardi at ¶ 2.   Mastronardi and its affiliates are one of the largest, if not the largest, fresh vegetable greenhouse operations in North America, growing and distributing tomatoes, peppers, cucumbers, and other fresh vegetables.  Id. at ¶ 3.  Mastronardi's SUNSET™ house brand is well known in the marketplace and its products are sold on a worldwide basis, including throughout the United States in grocery and other retail locations large and small.  Id. at ¶ 4.

In 1995 Mastronardi was a pioneer in the industry when it started branding fresh produce. Id. at ¶ 5. Tomatoes were no longer just going to be labeled "tomatoes". They would instead be branded apart from Mastronardi's house brand/trade name so customers could separately recognize and call for produce by name. Mastronardi started with a smaller sized tomato that it branded CAMPARI®. Id. at ¶ 6. Twenty years later CAMPARI® is known nationally and internationally as the TOMATO LOVERS TOMATO®. Id. at ¶ 7, 8. Other brands followed, including ANGEL SWEET® and ZIMA® tomatoes, SWEET TWISTER™ and ONE SWEET™ peppers, ONE SWEET® cucumbers, WOW™ strawberries, and many others. Id. at ¶ 9. Mastronardi currently owns 61 U.S. Trademark Registrations protecting its various brands, with 30 additional applications for registration in process in the United States Patent and Trademark Office ("USPTO"). Id. at ¶ 10.

The Mastronardi mark/brands at issue in this case are GOURMET MEDLEY® and MEDLEY™, which are used in connection with multicolored cocktail tomatoes. And to be clear, the full brand name is GOURMET MEDLEY®, but the dominant, and separately protectable, portion of the brand is MEDLEY™.

Mastronardi began selling GOURMET MEDLEY® / MEDLEY™ tomatoes at least as early as August 2009. Id. at ¶ 11. The tomatoes are currently sold in a number of different sizes (by weight) to the general public, with the largest size

being a 2-pound size and packaged in clear plastic clamshell-style container.  Id. at ¶ 12.  An image of the product as currently packaged is shown here:



Id. at ¶ 13.

Mastronardi began using GOURMET MEDLEY® packaging and promotional material featuring the dominant term "MEDLEY" written considerably larger than GOURMET in 2010.  Id. at ¶ 14.

A prior version of packaging for a 1lb container dating from 2009 is shown here:



Id. at ¶ 15.

By the end of 2009, sales in the United States of GOURMET MEDLEY® / MEDLEY™ tomatoes exceeded $1 million dollars. Id. at ¶ 16. Total U.S. sales through 2014 have exceeded $50 million dollars. Id. at ¶ 17.

Since 2009 GOURMET MEDLEY® / MEDLEY™ tomatoes have been sold in or through more than 250 stores and chains. Id. at ¶ 18. They are widely available for purchase in the United States, and can be found at Costco, Food Lion, and other large grocery and retail chains. Id. at ¶ 19. Mastronardi advertises and promotes GOURMET MEDLEY® / MEDLEY™ multicolored cocktail tomatoes by way of the actual product packaging, in brochures, and on social media. Id. at ¶ 20.

**B.      GOURMET MEDLEY® is a Registered Mark**

Mastronardi owns U.S. Registration No. 3687675 ("the '675 Registration"), which is registered on the Supplemental Register of the USPTO and directed to use of GOURMET MEDLEY® in connection with fresh tomatoes, raw tomatoes and unprocessed tomatoes. See **Ex. B** – the '675 Registration and related USPTO file history.   The '675 Registration was issued on September 22, 2009, and in October 2014 Mastronardi filed papers with the USPTO confirming that it was continuing to use the mark. Id. In addition, Mastronardi secured Canadian Registration Nos. TMA799808 and TMA756261, which are directed, respectively, to use of MEDLEY in connection with fresh fruits, herbs (edible) for cooking purposes, and GOURMET

5

MEDLEY for vegetables, and fresh fruits, herbs (edible) and vegetables. See **Ex. C** – Copies of TMA799808 and TMA756261.

### C.    Lakeside Produce, Inc.

Defendant Lakeside is a Leamington Ontario based (Cervini) family owned business that has been growing produce in greenhouses for several generations. See **Ex. D** – Images from LakesideProduce.com. Lakeside's offices are about 5 miles from Mastronardi headquarters. Id.

Lakeside sells peppers, tomatoes, and eggplant in direct competition with Mastronardi. Id. In some cases, Lakeside's products can be found in the same stores with Mastronardi's produce, with competing products positioned next to, or even on top of, each other, in plastic clamshell-style containers.

### D.    The Appearance in the Marketplace of Lakeside's Product

In May 2015 Mastronardi discovered Lakeside selling multicolored cocktail tomatoes in 2-pound packages under the name MEDLEY'S in at least one Detroit area Costco. See Ex. A at ¶ 21.

An image of the Lakeside MEDLEY'S product is shown here:



See **Ex. E** – Declaration of Debra Nichols at ¶ 8.

An even greater concern for Mastronardi was that its own GOURMET MEDLEY® / MEDLEY™ multicolored cocktail tomatoes and the Lakeside MEDLEY'S multicolored cocktail tomatoes were later found on sale together at Costco.

In a visit to the Commerce Township, Michigan Costco at about 10AM on July 2, 2015, Mastronardi found its own GOURMET MEDLEY® / MEDLEY™ product stacked on the same pallet, in the same vertical stack, with the Lakeside MEDLEY'S product.  Id. at ¶ 2.

The image below shows the boxes of the Mastronardi product stacked on top of the Lakeside product at the Commerce Township Costco:



Id. at ¶ 3.

This next image shows the Mastronardi product in the box on the top of the stack:



Id. at ¶ 4.

And next this next image shows the Lakeside product, as found in the first Lakeside box of the stack (fifth box from the top) – the four upper boxes having been lifted off so this image could be taken:



Id. at ¶ 5.

One container of each product was purchased during the July 2nd visit. Images of the purchased containers and the purchase receipt follow:




Id. at ¶ 6 – 9.

9

The purchase price for the Mastronardi product and the Lakeside product was the same - $5.99.  Costco had also assigned the same stockkeeping unit (SKU), 21046, to both products.

Mastronardi contacted Lakeside following the May discovery to try and resolve concerns regarding the likelihood of brand confusion, but no agreement was reached.  Mastronardi then initiated this litigation, and also parallel litigation against Lakeside in Canada.

This is not the first time Mastronardi has taken steps to protect its GOURMET MEDLEY® / MEDLEY™ brand.  See Ex. A at ¶ 22.  Mastronardi has written to alleged infringers on at least one other occasion involving infringement of the Canadian registration.  Id.  On that occasion the alleged infringer responded by agreeing to voluntarily change its name.  Id.

Given the similarity of the goods and the brands involved, and the fact that the goods are a food product sold to the general public, Mastronardi seeks a preliminary injunction to address its concerns and stop Lakeside's continued use of MEDLEY'S.

## II.    STANDARD OF REVIEW

The Court has issued several decisions involving preliminary injunctions in trademark cases and is obviously well aware of the four factors to be considered in

connection with a preliminary injunction motion, to wit: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction.  See **App. 1 -** *Reynolds v. Banks*, 2012 U.S. Dist. LEXIS 91064, *12-13 (E.D. Mich. June 29, 2012); **App. 2 -** *Valvoline Co. v. Magic Quick Lube*, 2009 U.S. Dist. LEXIS 100944, *6-7 (E.D. Mich. Oct. 29, 2009); and **App. 3 -** *Innovation Ventures, LLC v. N2G Distrib*., 2008 U.S. Dist. LEXIS 30047, *5-6 (E.D. Mich. Apr. 14, 2008).

### III.   ARGUMENT

#### A.   <u>Likelihood of Success on the Merits</u>

Mastronardi has a strong likelihood of success on the merits.  The GOURMET MEDLEY® / MEDLEY™ mark(s) have been in use for at least five years and the Court can and should presume the mark(s) have acquired distinctiveness / secondary meaning pursuant to 15 U.S.C. § 1052(f).  Sales and distribution in the United States of the GOURMET MEDLEY® / MEDLEY™ product have also been extensive, exceeding $50 million dollars through 2014.  The dominant portion of each brand MEDLEY™ versus MEDLEY'S is virtually identical.  The goods are virtually identical.  And the two products can be found on sale in the same major retail store,

in the same clamshell style packaging, to the same customers, at the same price, bearing the same sku code.

### 1.    <u>The Standard for Success</u>

This is a trademark infringement and unfair competition case.   Federal trademark infringement claims are governed by 15 U.S.C. § 1114(1). Under that provision, trademark infringement occurs when a person, acting without the permission of a trademark's owner, "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."  *Id.*

It cannot be disputed that Mastronardi never authorized Lakeside to use MEDLEY'S.

For the likelihood of confusion analysis the Court should consider the eight factors outlined in *Frisch's Rests., Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982), to wit:  (1) strength of the plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; (8) likelihood of expansion of the product lines.  *See Frisch's Rests., Inc., 670 F.2d at 648.*

2. **GOURMET MEDLEY® / MEDLEY™ ™ are Strong Mark(s) for Multicolored Cocktail Tomatoes**

GOURMET MEDLEY® / MEDLEY™ is a strong mark(s) when used in connection with multicolored cocktail tomatoes, having acquired distinctiveness following many years of use and extensive sales.

    a. **GOURMET MEDLEY® / MEDLEY™ Have Secondary Meaning**

"The strength of a mark is generally the result of (1) its unique nature; (2) its owner's intensive advertising efforts; and (3) which of the four categories the mark occupies: generic, descriptive, suggestive or arbitrary/fanciful." **App. 4 -** *Dino Drop, Inc. v. Chase Bar & Grill, LLC*, 2011 U.S. Dist. LEXIS 18088, 20-21 (E.D. Mich. Feb. 24, 2011)(*quoting Express Welding, Inc. v. Superior Trailers, LLC*, 700 F. Supp. 2d 789, 797 (E.D. Mich. 2010)).

Looking at the four categories of marks, it is hornbook law that suggestive or arbitrary/fanciful marks are automatically entitled to a degree of protection.  It is also hornbook law that generic marks can never be protected, and that descriptive marks are entitled to protection once the mark has acquired a "secondary meaning" - which is to say that in "…minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851 n.11 (1982).  Courts in this Circuit consider seven factors to determine if a mark has acquired secondary

meaning: (1) direct consumer testimony; (2) consumer surveys; (3) exclusivity, length and manner of use; (4) amount and manner of advertising; (5) amount of sales and number of customers; (6) established place in the market; and (7) proof of intentional copying.  See App. 4 - *Dino Drop, Inc. v. Chase Bar & Grill, LLC*, 2011 U.S. Dist. LEXIS 18088 (E.D. Mich. Feb. 24, 2011).

Lakeside is likely to vigorously contend that GOURMET MEDLEY® / MEDLEY™ is descriptive and unprotectable for at least the reason that GOURMET MEDLEY® was registered on the Supplemental Register in 2009.  But, even if one accepts for purposes of this motion that the mark(s) was descriptive back in 2009, the argument would fail today because GOURMET MEDLEY® / MEDLEY™ long ago acquired the requisite secondary meaning.

### b.   <u>Secondary Meaning is Presumed After Five Years Of Use</u>

The Court is permitted by law to presume that the GOURMET MEDLEY® / MEDLEY™ mark(s) has acquired secondary meaning, and is protectable, because the mark(s) have been in continuous use since August 2009.  Under Federal law, five years of use merits a presumption that a mark has acquired secondary meaning.  See 15 U.S.C. 1052(f); *Premium Balloon Access., Inc. v. Creative Balloons Mfg*., 573 Fed. Appx. 547, 556 (6th Cir. Ohio 2014))"…while it may make sense to infer that a mark so used has acquired secondary meaning…"); **App. 5 -** *Ashland Oil v. Olymco*, 1995 U.S. App. LEXIS 24652, *2 (6th Cir. Ky. Aug. 21, 1995) ("Ashland

14

obtained transfer of the mark to the principal register of the USPTO in March 1988, under § 2(f) of the Lanham Act, which allows for a presumption of distinctiveness of the mark after substantial exclusive use in commerce for five years."); **App. 6 -** *Hershey Co. v. Art Van Furniture, Inc*., 2008 U.S. Dist. LEXIS 87509, *10 (E.D. Mich. Oct. 24, 2008)("Federal law recognizes as prima facie evidence of distinctiveness, the fact that a mark or trade dress has been used in commerce, for a minimum of five years, and in a manner both substantially exclusive and continuous. 15 U.S.C. § 1052(f).").

Mastronardi contends here that MEDLEY™ is its own mark, based on fact that the term is highlighted on the product label and in other materials merits. Alternately, as will be discussed further infra, MEDLEY is clearly the dominant term of GOURMET MEDLEY® since term GOURMET merely modifies MEDLEY™ and MEDLEY™ is printed considerably larger than GOURMET on the product labels and other media.

Mastronardi has used the GOURMET MEDLEY® / MEDLEY™ mark(s) continuously for more than five years - since August 2009 - in connection with the sale of multicolored, cocktail tomatoes.  Therefore, secondary meaning can, and should, be presumed.

### c.   Mastronardi and the GOURMET MEDLEY® / MEDLEY™ Brands Are Market Leaders

Mastronardi and its affiliates are one of the largest, if not the largest, fresh vegetable greenhouse operations in North America.   And substantial sales of GOURMET MEDLEY® / MEDLEY™ tomatoes reflect its standing in the marketplace. Since 2009 GOURMET MEDLEY® / MEDLEY™ tomatoes have been sold in or through more than 250 stores and chains.  And between 2009 and 2014 Mastronardi's sales of GOURMET MEDLEY® / MEDLEY™ multicolored, cocktail tomatoes exceeded $50 million dollars.   Therefore, by any estimate Mastronardi has sold millions of containers of GOURMET MEDLEY® / MEDLEY™ tomatoes.  Other courts in this District have found secondary meaning under similar circumstances. See App. 6 - *Hershey Co. v. Art Van Furniture, Inc.*, 2008 U.S. Dist. LEXIS 87509, *36 (E.D. Mich. Oct. 24, 2008)("Plaintiff is one of the largest producers of chocolate and confectionery goods, its products are sold around the world and it spends tens of millions of dollars annually to maintain and promote its products. Plaintiff is also protective of its brands and holds hundreds of trademarks, although none specifically covers the trade dress at issue here. These factors, combined with the iconic status of the classic Hershey's bar, prove that Plaintiff's mark is both famous and distinctive.").   Mastronardi's sales of GOURMET MEDLEY® / MEDLEY™ are not just substantial, they are market

leading and strongly support a conclusion that the marks have acquired secondary meaning.

### d.    Lakeside Knew About, and Copied, Mastronardi's Marks

Mastronardi and Lakeside are direct competitors with headquarters located five miles apart. Mastronardi's GOURMET MEDLEY® / MEDLEY™ product had been in the marketplace for years prior to the appearance of Lakeside's MEDLEY'S. The goods are in the exact same product category - cocktail fresh tomatoes. The clear plastic clamshell packaging is exactly the same. The Costco SKU for the products is the same. Mastronardi and Lakeside products are literally sold side-by-side in the same stores. Lakeside and Mastronardi packaged cocktail tomato products have also been known to be comingled with each other's products and respective boxes when sold side-by-side.   These circumstances lead to one conclusion; Lakeside knew about Mastronardi's product and Lakeside copied its product and product name from Mastronardi.

Copying is evidence of secondary meaning, and it is well established that "…the use of a contested mark with knowledge of the protected mark at issue can support a finding of intentional copying." See *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 286 (6th Cir. 1997).

Here, copying by Lakeside's of Mastronardi's GOURMET MEDLEY® / MEDLEY™ brand can be easily inferred by the available circumstantial evidence.

Lakeside is not a newcomer to the industry and so it simply is beyond belief that it would just launch a product, for sale to a market giant like Costco, absent knowledge that its direct *next door* competitor had for years been selling a cocktail type tomato virtually identical in appearance under the same name. Lakeside must have known about GOURMET MEDLEY® / MEDLEY™ tomatoes, but chose to adopt the MEDLEY'S name in spite of that knowledge.

Therefore, based on all the above, the long use, the extensive sales and distribution, and the inference of prior knowledge and copying, the Court should hold that GOURMET MEDLEY® / MEDLEY™ are strong and protectable marks.

### 3.    Relatedness of the Goods

This factor is open and shut. The goods are virtually identical. Mastronardi and Lakeside are each selling multicolored cocktail tomatoes in 2lb clear plastic clamshell packaging. In fact, when stacked on top of each other, the product on the bottom of the stack is indistinguishable from the product on the top.

 

4.     **Similarity of the Marks**

The dominant portions of each mark are virtually identical.  In fact, the only real difference between the marks is that Lakeside does not use the term GOURMET.

As the Court explained in *Midwest Guar. Bank v. Guar. Bank*, 270 F. Supp. 2d 900 (E.D. Mich. 2003):

> Similarity of the marks "is a factor of considerable weight." The analysis involves more than a side-by-side comparison of the service marks. The relevant inquiry is whether a particular trademark, when viewed alone, would lead to uncertainty about the goods or services that it identifies, accounting for the possibility that sufficiently similar marks may confuse consumers who do not have both marks before them but who may have a general, vague, or even hazy, impression or recollection of the other party's mark. The Court must view the marks in their entirely and focus on their overall impressions, not their individual features.   A proper analysis involves examining the pronunciation, appearance, and verbal translation of the conflicting marks.

*See Midwest Guar. Bank,* 270 F. Supp. 2d at 915. (*Citations omitted*).

Lakeside's MEDLEY'S completely incorporated the dominant MEDLEY term from Mastronardi's mark.  It is a well-established tenant of trademark law that "if one word or feature of a composite trademark is the salient portion of the mark, it may be given greater weight than the surrounding elements." **App. 7 -** *Citizens Banking Corp. v. Citizens First Bancorp, Inc.,* 2007 U.S. Dist. LEXIS 88325, *9 (E.D. Mich. Dec. 3, 2007)(quoting *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc*., 128 F.3d 1111, 1115 (7th Cir. 1997)).  Moreover, "[w]here the proposed mark consists of but two words, one of which is disclaimed, the word not disclaimed is

19

generally regarded as the dominant or critical term in determining the distinctiveness or suggestiveness of the proposed mark. See *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1529-1530 (4th Cir. 1984)(citing *American Throwing Co. v. Famous Bathrobe Co.*, 250 F.2d 377, 382 (CCPA 1957)).

Mastronardi contends here that MEDLEY is its own mark, based on fact that the term is highlighted on the product label and in other materials merits. Alternately, MEDLEY is clearly the dominant term of GOURMET MEDLEY® since term GOURMET merely modifies MEDLEY and MEDLEY is printed considerably larger than GOURMET on the product labels and other media. GOURMET was also the only disclaimed term in the '675 Registration, which by default rendered MEDLEY the dominant term.

A second a well-established tenant is that "[w]hen marks would appear on virtually identical goods or services, the degree of similarity necessary to support a conclusion of likely confusion declines." See *Century 21 Real Estate Corp. v. Century Life of America*, 970 F.2d 874, 877 (Fed. Cir. 1992); See also *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1190-1191 (6th Cir. 1988)("Obviously, since both marks use absolutely identical language to sell a nearly identical service, the likelihood of confusion must be considered great."). The goods here are virtually identical, which means a lower degree of similarity necessary to support confusion.

Lakeside's mark is legally highly similar, if not identical to Mastronardi's mark.  The goods are virtually identical and MEDLEY'S merely adds the apostrophe S to Mastronardi's dominant MEDLEY and drops the term "GOURMET".  This factor weighs strongly in favor of Mastronardi.

### 5.   Evidence of Actual Confusion

There is no evidence in Mastronardi's possession, at present, of actual confusion. But the Court has recognized that "… a lack of such evidence is rarely significant because of the difficulty of securing such evidence." *Midwest Guar. Bank v. Guar. Bank*, 270 F. Supp. 2d at 916-917.  Therefore, the absence of such evidence should not weigh against Mastronardi.

### 6.   Marketing Channels Utilized

This factor is also open and shut. The marketing channels used by Mastronardi and Lakeside to sell the products are exactly the same (e.g,. Costco) .

> This factor 'consists of considerations of how and to whom the respective goods or services of the parties are sold.' This requires an analysis of the parties' predominant customers and their marketing approaches.

*Midwest Guar. Bank*, 270 F. Supp. 2d at 921-922 (*citations omitted*).

The goods at issue have been found on sale together to the same customers, in the same store, physically stacked on top of each other – and at times, comingled. Both entities also have an Internet presence.   Therefore, this factor favors Mastronardi.

21

### 7.     Degree of Customer Care and Sophistication

This too is an open and shut factor favoring Mastronardi.  The customer care and sophistication required in this case is no higher than a typical member of the general public exercising ordinary caution to purchase produce.

> Generally, in assessing the likelihood of confusion to the public, the standard used by the courts is the typical buyer exercising ordinary caution. However, when a buyer has expertise or is otherwise more sophisticated with respect to the purchase of the services at issue, a higher standard is proper. Similarly, when services are expensive or unusual, the buyer can be expected to exercise greater care in her purchases. When services are sold to such buyers, other things being equal, there is less likelihood of confusion.

*Midwest Guar. Bank,* 270 F. Supp. 2d at 922 (*citations omitted*).

Costco, at least, considers the Lakeside and Mastronardi tomatoes interchangeable – they have the exact same SKU and the exact same price. Therefore, the typical consumer has no reason to exercise anything other than ordinary care when making a purchase.

### 8.     Lakeside's Intent in Selecting its Mark

As mentioned above, it would be beyond belief that Lakeside started selling its MEDLEY™ product to Costco – the market giant where it regularly competes side-by-side with Mastronardi – absent any awareness of Mastronardi's GOURMET MEDLEY® / MEDLEY™ product.  The goods are virtually identical and are in the exact same product category.  The Costco SKU is the same.  The clear plastic clamshell packaging is exactly the same.   Lakeside must have known about

Mastronardi's product. In fact, Lakeside likely deliberately selected the name MEDLEY'S to compete head-to-head with Mastronardi.

### B.    Irreparable Injury Follows from the Showing of A Likelihood of Confusion

Irreparable injury and harm to Mastronardi should be presumed to "ordinarily follow" from Lakeside's conduct. "The Sixth Circuit has recognized that 'irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears from infringement or unfair competition.'" App. 3 - *Innovation Ventures, LLC v. N2G Distrib.*, 2008 U.S. Dist. LEXIS 30047, 19-20 (E.D. Mich. Apr. 14, 2008)(citing *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 382 (6th Cir. 2006)); see also **App. 8** - *Innovation Ventures, LLC v. Body Dynamics, Inc.*, 2009 U.S. Dist. LEXIS 26535, *9-10 (E.D. Mich. Mar. 30, 2009)("Moreover, in decisions that post-date *eBay*, the Sixth Circuit has continued to recognize a presumption of irreparable harm in trademark cases where a 'likelihood of confusion or possible risk to reputation appears from infringement or unfair competition.'").

Mastronardi has shown, *supra*, that its GOURMET MEDLEY® / MEDLEY™ mark(s) is strong, the goods and conditions of sale of the goods are virtually identical, and that confusion is likely to result between Mastronardi's brand and Lakeside' MEDLEY'S brand if Lakeside is permitted to continue selling. Irreparable harm should be presumed.

23

### C.      Harm to the Public May Result If An Injunction is Not Granted

Not granting an injunction is likely to result in customers thinking they have purchased Mastronardi's product, when in fact they purchased Lakeside's. However, if an injunction is granted consumers would obviously still have access to cocktail tomatoes sold by Mastronardi, other third party vendors, and even Lakeside – provided Lakeside drops MEDLEY'S.

### D.      The Public Has An Interest In Not Being Confused Concerning the Source of Food

"The public interest is served by protecting one's trademark rights and avoiding confusion in the marketplace." *Midwest Guar. Bank*, 270 F. Supp. 2d at 924.  Mastronardi has a protectable trademark right in the use of the GOURMET MEDLEY® / MEDLEY™ marks in connection with multicolored cocktail tomatoes.  Lakeside introduced a likelihood of confusion into the marketplace when it launched its own package of multicolored cocktail tomatoes and chose to call that product MEDLEY'S.  The public interest protecting marks, and indeed the public health interest in avoiding confusion concerning the source of food, favors the grant of an injunction against further use of MEDLEY'S by Lakeside.

## CONCLUSION

In view of the all the above facts and arguments, Mastronardi requests that the

motion be GRANTED.

Respectfully submitted,

s/ Mark D. Schneider (P55253)
GIFFORD, KRASS, SPRINKLE,
ANDERSON & CITKOWSKI, P.C.
2701 Troy Center Drive, Suite 330
Troy, Michigan  48084
(248)647-6000
(248)647-5210 (Fax)
litigation@patlaw.com


s/ David E. Einstandig (P47344)
THAV GROSS, PC
30150 Telepgraph Road, Suite 444
Bingham Farms, Michigan 48025
(248) 645-8232
(248) 220-1410 (Fax)
deinstandig@thavgross.com

***Attorneys for Plaintiff***

Dated: August 7, 2015

## **CERTIFICATE OF SERVICE**

I certify that on August 7, 2015, the foregoing Motion for Preliminary Injunction and Brief in Support of Motion for Preliminary Injunction was served upon the following individuals via Federal Express:

Douglas R. Wolf                            Lakeside Produce, Inc.
Wolf, Greenfield & Sacks, P.C.            132 Elliott Street
600 Atlantic Avenue                        Leamington, Ontario
Boston, MA 02210-2206                      N8H 1A4
                                           CANADA


_____
Debra Nichols

26